**CHAPMAN, Banking Commissioner, v. RUCKER et al.   (No. 11152.)**

(Court of Civil Appeals of Texas. Fort Worth. April 25, 1925.)

**1. Banks and banking ⬅—15—Deposit held under evidence not to have been interest bearing or secured.**

In suit by depositor against banking commissioner in charge of liquidation of state bank, plaintiffs' deposit *held*, under evidence, not to have been interest bearing nor secured.

**2. New trial ⬅—102(6)—Refusal of new trial for alleged newly discovered evidence held without error.**

In suit by depositor of defunct bank against banking commissioner under Bank Deposit Guaranty Law (Vernon's Sayles' Ann. Civ. St. 1914, arts. 445–517), where defendant's attorneys had access to books of bank and could have ascertained whether funds were interest bearing, there was no error in overruling motion for new trial for alleged newly discovered evidence that plaintiffs' deposit was on time.

**3. Appeal and error ⬅—883—Finding held not erroneous, in view of agreement thereon between parties.**

Where statement of facts showed that one bank assumed indebtedness of another, and such fact was agreed by parties, assignment, attacking judgment for error in finding in accordance with such agreement as being without evidence, was without merit.

**4. Banks and banking ⬅—15—Evidence held to support finding that bank was closed by commissioner for purpose of liquidation.**

In suit by depositor against banking commissioner under Bank Deposit Guaranty Law (Vernon's Sayles' Ann. Civ. St. 1914, arts. 445–517) evidence *held* to support verdict that bank was closed by banking commissioner for purpose of liquidation.

Appeal from District Court, Johnson County; Irwin T. Ward, Judge.

Action by Mrs. Birdie Rucker and husband against J. L. Chapman, Banking Commissioner. Judgment for plaintiffs, and defendant appeals. Affirmed.

W. A. Keeling, of Mexia, and John W. Goodwin, of Austin, for appellant.

J. E. Warren and J. K. Russell, both of Cleburne, for appellees.

BUCK, J. Mrs. Birdie Rucker, joined by her husband, J. D. Rucker, brought suit against J. L. Chapman, banking commissioner of Texas, the State Banking Board of Texas, composed of said commissioner and W. A. Keeling, Attorney General, and C. V. Terrell, treasurer of Texas, and the Guaranty State Bank of Cleburne, alleging that on April 17, 1922, said Guaranty State Bank was duly incorporated under the banking laws of the state, with a capital stock of $100,000, and was duly admitted by the state banking board to the benefit and protection of the Bank Deposit Guaranty Law (Vernon's Sayles' Ann. Civ. St. 1914, arts. 445—517) of the state of Texas, and that on said last-named date the plaintiff had on deposit in said bank the sum of $11,859.92, and that said deposits were noninterest bearing and unsecured.

Plaintiff further alleged that prior to the time the Guaranty State Bank of Cleburne had received said deposits, the Traders' State Bank of Cleburne, Tex., had held some of her funds as an interest-bearing account, but that on December 5, 1921, she changed the nature of her account and deposits with said Traders' State Bank from an interest-bearing account to an open account, and that subsequently the Guaranty State Bank purchased said Traders' State Bank and became responsible for all the deposits of the Traders' State Bank, and that thereafter said Guaranty State Bank had on deposit to the credit of the plaintiff the sum

---

of $11,859.92, and that it so had on the 4th day of April, 1923, when it was taken over by the banking commissioner of the state of Texas. The plaintiff further alleged that she had filed her claim with the banking commissioner for said amount, but that said claim had not been paid.

The defendant, J. L. Chapman, banking commissioner, for the Guaranty State Bank, filed a general demurrer and a general denial, and further pleaded that if any change in the nature of the deposits was made with any one other than the plaintiff, that plaintiff ratified all of said acts, if any, and accepted the benefits of same and is bound by the same. The state banking board answered to the same effect.

[1] The cause was tried before a jury, and only one issue was submitted to it, which was:

"Did the plaintiff, Mrs. Birdie Rucker, intend that the sum of $11,859.92, which she had on deposit in the Guaranty State Bank of Cleburne, Tex., should be interest bearing or secured deposit?"

The jury answered, "No."

Judgment was accordingly entered awarding the plaintiff judgment against the banking commissioner and the state banking board and the Guaranty State Bank for $11,-859.92, from which the defendants have appealed. The plaintiff testified that she made various deposits with the Traders' State Bank during the years 1920 and 1921; that on December 5, 1921, by reason of her daughter's 'phoning her from high school that it was reported that the Traders' State Bank was having a run made on it, she went down town, and to the bank, and gave a check on it as follows:

"Cleburne, Texas.  Dec. 5, 1921.

"Traders' State Bank Cleburne, Texas.

"Pay to the order of open account $13,954.50, thirteen thousand nine hundred fifty-four and 50/100 dollars.

"[Signed] Mrs J. D. Rucker.
"[Stamped] Paid 12—5—21.  . Interest."

That she never changed her account at the Traders' State Bank thereafter from an "open account" to an "interest-bearing account," nor did she ever authorize the Guaranty State Bank after it took over the assets of the Traders' State Bank, to change her account from an "open account" to an "interest-bearing account." The statement of facts signed and certified by the trial judge provides:

"It is agreed by the plaintiffs and defendants, that the Guaranty State Bank of Cleburne, Tex. took over the assets and assumed the indebtedness of the Traders' State Bank of Cleburne, Tex., and that it was organized under the state banking laws and was entitled to the protection of the guaranty fund of the state of Texas, and that the plaintiff, Mrs. Birdie Rucker, made out a claim for $11,000,

and some odd dollars, sworn to as provided by law in due time, and that the same was rejected by the banking commissioner of the state of Texas."

We think that appellant's assignments 1, 2, 3, and 4, in effect attacking the verdict and judgment for insufficiency of evidence to support the finding of the jury that Mrs. Rucker had on deposit with the defendant bank the funds sued for, should be overruled.

[2] The sixth assignment complains of the action of the trial court in overruling the motion of appellant for a new trial, by reason of a letter written by J. R. Nail from Carlsbad, N. M., to J. E. Stroop, Cleburne, Tex., which, in so far as is pertinent, is as follows:

"Dear Joe:  Your letter reached me at Roswell Sunday and I received a similar letter from Judge Goodwin. This is the substance of my Rucker conversation. I was undertaking to sell him 44 acres of land adjoining his farm north of town. He told me that if we could agree on price that he would pay cash, provided he could get his wife sufficiently interested to take her money off of time deposit. We had practically agreed on everything the afternoon the Guaranty Bank closed. Late that afternoon, after the closing of the bank, I was in Floyd's barber shop. The doctor came in and asked me if I would go out and talk to his wife and see if I could pacify her some, as she was dam near crazy. I went out to the car and had a conversation with both the doctor and Mrs. Rucker, I told her I was so sure that the bank would reopen, that I would take their check against the time deposit, and go on with the sale, as per our former negotiations. I do not recall, that either of them, at the time made the statement that the money was on time deposit, but rather took it for granted. I wish you would please communicate this to Judge Goodwin, and I will write him that I have made you a statement covering the matter "

A judgment was rendered May 20, 1924, and the amended motion for new trial was overruled July 3, 1924. This letter from Mr. Nail was written on May 28th, and evidently received in due course of mail. The motion for new trial is not supported by affidavit of Mr. Nail to the effect that the facts set forth in his letter are true, and apparently appellant's attorneys had ample time to secure such affidavit if they thought it necessary.

J. K. Russell, one of appellee's attorneys, testified on the hearing of defendant's second amended motion for new trial, that J. R. Nail was a brother-in-law of J. E. Stroop; that J. E. Stroop had been closely connected with the liquidating agent of the bank and officed with him, and was with him daily prior and up to the trial of this suit; that Mr. Goodwin, one of the attorneys for the banking commissioner, stated immediately after the verdict of the jury was brought in, that he was going to appeal this case on newly discovered evidence.

H. L. Jennings testified that he was the liquidating agent of the Guaranty State Bank from April 29, 1923, to May 1, 1924, and that during a part of that time Mr. J. E. Stroop worked for him as an assistant. He testified:

"With reference to this newly discovered evidence, I think Judge Goodwin told me first over here that he had talked to Mr. Stroop about the matter and had discovered this evidence, and I believe I then went and talked to Mr. Stroop about it myself. That was the first time I talked to him about it. I don't know what day that was. I couldn't swear what time of day it was, either. I think Judge Goodwin called me back there in the back end of the courtroom after the thing had all been wound up here and told me about it. I wouldn't say that the jury had hardly gotten out of the courthouse after returning their verdict before he told me that. I don't know as a matter of fact that the verdict of the jury was returned late in the evening. I don't think I heard what the verdict was until the next morning. I would not be positive that I heard of it that day. I didn't stay over here all the time during the trial. Whenever they would phone me to come over here so they could ask me something I would come over here. I wouldn't swear that Judge Goodwin told me about the newly discovered evidence the same day that the verdict was returned in this case; I wouldn't be positive about that. It is awful for anybody to admit such blankness, but I had to ask while ago whether or not this was a jury case. I had forgotten, we had so many cases over here."

It is further shown that the attorneys for the appellant here had access to the books of the Traders' State Bank as well as to those of the Guaranty State Bank, and if the books of the Guaranty State Bank show that the funds of plaintiff below had been deposited in that bank as interest-bearing funds, the appellant could doubtless have shown it. We are of the opinion that the trial court did not err in refusing to grant the motion for new trial on the ground of newly discovered evidence.

[3, 4] Another assignment attacks the judgment on the ground that the court erred in finding that the Guaranty State Bank of Cleburne assumed the liabilities of the Traders' State Bank of Cleburne, there being no evidence of such assumption. As before stated, the statement of facts shows that the Guaranty State Bank of Cleburne assumed the indebtedness of the Traders' State Bank of Cleburne, and it is stated that this fact "is agreed by the plaintiffs and defendants."

The eighth assignment of error is:

"Because the verdict of the jury is unsupported by the evidence in this, there is no evidence that the Guaranty State Bank of Cleburne was closed by the banking commissioner for the purpose of liquidation."

The plaintiff testified:

"I never was in the Guaranty State Bank until after it failed, about the 27th day of April, after it had failed on the 4th. After I transferred my account from an interest-bearing account to an open account, none of the officers of that bank ever took up with me the matter of transferring that back to the interest-bearing account. They never did that by letter, telephone, or in person. I never did authorize any one else to transfer my account from a noninterest-bearing, unsecured account back to an interest-bearing account. If the same was done it was done without my knowledge or consent or authority. At the time that the Guaranty State Bank failed on April 4, 1923, I had no knowledge one way or other that my account if it does show on the books as an interest-bearing account, was upon an interest-bearing account."

J. K. Russell, attorney for plaintiff, on defendant's motion for rehearing, testified:

"Mr. Jennings was the first liquidating agent sent here; I don't know when he took charge. It was after the bank had closed its doors and the banking commissioner took over the assets of that bank and was liquidating the assets."

H. L. Jennings:

"I was liquidating agent of the Guaranty State Bank up to about May 1, 1924; I was liquidating agent up to that time from April 29, 1923."

The record discloses that representatives from the Attorney General's department of the state were representing the defendants. In the absence of any evidence to the contrary, we think the proof that the bank was closed by the banking commissioner for the purpose of liquidation is sufficient.

For the reasons given, all assignments of error are overruled, and the judgment is affirmed.